No. 24,024.

N. P. NELSON, *Appellee*, v. THE STATE BANK OF OTTAWA, *Appellant*.

SYLLABUS BY THE COURT.

BANK—*Gratuitous Agency to Remit Interest on Mortgage—Substantially Discharged Without Material Deviation.* The proceedings examined, and *held,* a bank substantially discharged a gratuitous agency to pay interest on mortgages and procure interest coupons for a customer, without material deviation from instructions and without loss to the customer.

Appeal from Franklin district court; HUGH MEANS, judge. Opinion filed December 9, 1922. Reversed.

*Wilbur S. Jenks,* of Ottawa, for the appellant.
*H. M. Funston,* of Ottawa, for the appellee.

The opinion of the court was delivered by

BURCH, J.: This action was one to recover for nonperformance of gratuitous agency. The plaintiff recovered, and the defendant appeals.

The plaintiff purchased real estate, subject to two mortgages given to Pettyjohn & Company. Desiring to pay interest on the mortgages, the plaintiff requested the bank to transact the business. The plaintiff was a depositor in the bank, and gave a check on his account for the amount of the interest. Pettyjohn & Company owed the bank, and had instructed the bank to credit on the indebtedness any money received for Pettyjohn & Company's account. This was done, Pettyjohn & Company were duly notified, and were requested to forward the interest coupons to the bank. Soon afterward Pettyjohn & Company were declared to be bankrupt. Pettyjohn & Company had assigned both mortgages, and the assignment of one of them had been recorded. The plaintiff paid the assignees, and sued the bank. The court returned the following finding of fact:

"On the 25th day of January, 1921, the plaintiff, N. P. Nelson, went into the place of business of the State Bank of Ottawa, in Ottawa, Kansas, and requested the bank to send $132 to J. L. Pettyjohn & Company, for the purpose of paying the interest on the two loans above mentioned, which interest was due about February 1, 1921, and he also told the bank that he desired the interest coupons representing the interest to be paid. The bank agreed to send the money to J. L. Pettyjohn & Company, and to secure the return of the coupons if possible. The plaintiff paid the defendant, the State Bank of Ottawa, the sum of $132, to be used for the purpose indicated. The bank neg-

lected to send or forward the $132 so received by the defendant J. L. Pettyjohn & Company."

This finding does not, in all respects, accurately represent the testimony, and requires interpretation because it employs terms having different meanings in different relations.

The testimony does not disclose an agreement on the part of the bank to obtain the interest coupons "if possible," and does not permit the inference that the coupons were to be obtained by handling the money in any way except by paying Pettyjohn & Company. There is no basis in the testimony for an inference that the bank was requested or agreed to send $132 in money to Pettyjohn & Company. The plaintiff made no special deposit of money, his check segregated no fund in the bank, and the bank was at liberty to use any of its money to pay the amout of the plaintiff's interest to Pettyjohn & Company. The plaintiff gave no instruction relating to method of remittance. The bank was at liberty to choose any approved method, and the agreement to "send the money" would have been satisfied by forwarding specie or currency, or by mailing the bank's own check or draft, or by any method which would have paid the coupons if Pettyjohn & Company had held them. This being true, the bank did not neglect to send or forward to Pettyjohn & Company any special fund, or any sum of identified money, or any money, amounting to $132, received from the plaintiff; and if the finding is to be interpreted as disclosing bailment, or special deposit, or trust fund, it is not sustained by the evidence.

The finding is to be interpreted as stating the facts, uncolored by legal conclusions, showing the nature of the transaction. So interpreted, the transaction is just what the plaintiff understood it to be. He testified he was following a custom of paying interest through the bank, to "headquarters where the loan was issued." The bank was following a familiar practice of accommodating customers by doing that kind of business for them.

The law of the case is well stated in the treatise on agency in 2 C. J. at page 717:

Ordinarily a substantial compliance with the terms of the authority is all that can be required, and where this has been done a circumstantial variance from the instructions is immaterial. But it must be shown affirmatively that the deviation in no manner contributed to the loss. Deviations cannot be justified on the ground that they were not material if the principal in giving the instructions regarded them as material.

"In so far as the agent is invested with discretionary powers he is required to act only according to the best of his judgment for the interest of his principal, and in the absence of negligence or bad faith he will not be liable; but if the instructions are direct and positive the agent has no discretion, and his motives in departing therefrom are not material, . . ."

Pettyjohn & Company was the final destination of the plaintiff's money, and the bank was charged with no duty to see that Pettyjohn & Company applied it properly, or that it reached anyone else. The case is not one in which the bank arbitrarily impounded funds which it was obligated to use to accomplish the plaintiff's ends, and used them to accomplish its own ends. The bank was receiving from time to time money belonging to Pettyjohn & Company. Pettyjohn & Company owed the bank. Remittance by the bank to Pettyjohn & Company, and return remittance by Pettyjohn & Company to the bank, involved economic waste, which was obviated by the authority given the bank to credit Pettyjohn & Company money on their note. Under these circumstances, Pettyjohn & Company received the plaintiff's money when it was credited on their note, and the bank discharged its duty to the plaintiff without material deviation when it made the credit, notified Pettyjohn & Company, and requested that the interest coupons be forwarded.

The bank's conduct occasioned the plaintiff no loss. One mortgage was assigned to the Temple Trust Company, and the assignment was recorded. The other mortgage was assigned to Carson & Company, and the assignment was not recorded. Interest on the Carson & Company mortgage was paid by what the bank did, and the plaintiff rested under no obligation to pay it again. (Gen. Stat. 1915, § 6485.) With respect to the Temple Trust Company mortgage, the plaintiff was in precisely the same situation as if he or the bank had remitted to Pettyjohn & Company by draft, and the draft had been paid. If Pettyjohn & Company had remained owner of the mortgage, or if the assignment had not been recorded, the interest would have been paid, and when the bank effected payment to Pettyjohn & Company, its duty to the plaintiff was discharged.

The plaintiff has a theory that if the bank had "sent the money" to Pettyjohn & Company, he would have had a preferred claim against the bankrupt's estate for a trust fund, which he cannot now assert. The court is not deciding the matter but, as indicated earlier in this opinion, the expression "sent the money," may mean one thing or may mean another. Very little specie and currency are

shipped to mortgage companies to pay interest on loans they have made. The plaintiff did not specify that method of paying his interest. The bank had discretion, and could use its best judgment, exercising due care and good faith. It would have discharged its agency by remitting to Pettyjohn & Company by draft. The method adopted got "the money" to Pettyjohn & Company as effectually as if remittance had been made by draft, and if "sending the money" by draft would have given the plaintiff the privilege of claiming a preference, he has that privilege now.

It is not necessary to review the authorities cited by the respective parties. The case is not one of bailment, or special deposit, or trust fund. It is simply a case of agency. The plaintiff furnished the bank with funds to pay to Pettyjohn & Company interest on his mortgages. The sole restriction imposed on the bank was that implied by the purpose for which the money was furnished. That purpose was accomplished.

The petition counted on a contract ·by the bank, made in consideration of a deposit of $132, to get interest coupons. There was no evidence of such a contract. The money was to go to Pettyjohn & Company and, following the finding of fact, it was not "possible" for the bank to obtain the coupons by such means.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the defendant.